(No. 33598.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JUNE CLARK, Plaintiff in Error.

*Opinion filed November 23, 1955*

Louis A. Rosenthal, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, EDWARD EGAN, and ROBERT J. SMITH, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

On a trial before the criminal court of Cook County without a jury, defendant, June Clark, was found guilty of the crime of selling narcotic drugs and was sentenced to the Illinois State Reformatory for Women for a term of two to five years. A writ of error has been sued out of this court and the cause is here for review.

Prior to her trial, defendant filed a motion to suppress evidence allegedly obtained by unreasonable search and seizure without right of search warrant. At the preliminary hearing upon such motion defendant called as her first witness, Eugene Cassidy, one of the police officers who arrested her. Cassidy testified that early in the evening of April 14, 1954, he took one Albert Baker into custody for investigation, that Baker admitted he was a narcotics addict and, when asked, expressed willingness to bring his suppliers into custody. From Cassidy's further testimony and from that of Baker, who was called as a witness by the People, it appears that the latter telephoned the apartment occupied by defendant and asked for William Rogers, whom he believed to be the defendant's husband. Rogers was not present, but when Baker told defendant he had some topcoats for which he wanted to get some "stuff," she told him to come over. The police then made a complete search of Baker's clothing and person and ascertained that he had no narcotics in his possession. Thereafter, Baker was given officer Cassidy's topcoat and $10 in marked bills, (a five-dollar bill and five single-dollar bills,) and was driven to the apartment building where defendant resided.

Baker entered the apartment building accompanied by police officer Griffin and, while the latter waited in the hall, Baker went into room 315. There, by his version, he found defendant alone and purchased from her two sealed packets of powder for which he paid her $10. He testified that she refunded him one of the dollar bills at his request and that when he "told her about the topcoats" she said he would have to wait until Rogers came. Baker then departed leaving Cassidy's topcoat in the room. The packets purchased from defendant were turned over to Cassidy, who had remained in front of the building in a police car, and were found to contain a white powder which, when field tested on the spot, proved to be a derivative of opium.

Officers Cassidy, Griffin and Poole, all of whom were dressed in civilian clothes, immediately returned to room 315 where defendant responded to their knock by opening the door the length of a chain lock by which it was secured. Through the opening Cassidy could see his topcoat on a chair. According to Cassidy, he and his partners identified themselves as police, exhibiting their stars as they did so, and directed defendant to open the door. When she refused, the officers forced their way into the room. Upon being questioned defendant denied that she had sold narcotics to Baker, or to any other person, or that she had received any money from him. A subsequent search of the apartment did not reveal any narcotics but when defendant was searched by a police matron, who was called to the apartment for the purpose, nine dollars of the marked bills given Baker were found in the pocket of her housecoat. This money, together with Cassidy's topcoat, was confiscated by the police.

Testifying in her own behalf, defendant stated that the police officers broke into her room without identifying themselves, that they had questioned her and searched the apartment for almost 15 minutes before they did so, and that they broke the chain lock before she had an oppor-

tunity to admit them. She related that they did not ask her about money or narcotics but kept referring to "stuff" in such a manner that she did not know what they were talking about. Defendant admitted having the nine dollars in marked bills on her person but explained her possession as follows: Baker, whom she knew and who frequently visited other people in the apartment building, telephoned her early on the night in question and asked for William Rogers, a friend of defendant. When Baker learned that Rogers was expected he asked if he could come to defendant's apartment to wait, saying he had something for Rogers. Baker came to the apartment carrying a topcoat and, after waiting a short time, asked defendant if he could leave the coat and if she would take nine dollars he owed to Rogers. Accordingly, defendant permitted Baker to leave the coat and accepted from him a five-dollar bill and four one-dollar bills for Rogers. She denied that she had sold or exchanged anything with Baker for the money and topcoat. At the conclusion of her testimony defendant stated that Baker had come to her apartment the morning of the same day and borrowed money from her friend.

After hearing the foregoing testimony, the court denied defendant's motion to suppress property taken from the apartment as evidence, and the cause immediately proceeded to trial when defendant's counsel stipulated that the testimony heard on the motion would be the same as would be presented by the People on its case in chief. Thereafter, each side produced one more witness. For the People, a chemist testified that the powder in two packets delivered to him on April 15, 1954, by one of the officers participating in defendant's arrest, was heroin. For the defense, William Rogers testified that he was a friend of defendant and a frequent visitor at her apartment; that he knew Baker and was aware of the latter's narcotic addiction; that Baker, on April 14, 1954, owed him nine dollars, and that defendant had told him the day following her arrest

that the purpose of Baker's visit had been to leave with her the nine dollars he owed to the witness. Also admitted into evidence against defendant were the packets of powder referred to and the marked money found in her possession.

As ground for reversal in this court defendant first contends that she was denied due process of law when the court permitted her counsel, who was either inexperienced or incompetent, to stipulate away her basic right to a fair trial. In argument under this point defendant says that it is "incredible" that her counsel would have called a People's witness (Cassidy) to testify in support of the motion to suppress and that counsel's error in so doing was compounded when he stipulated that Cassidy's testimony would be the same at the trial of the cause. We have held that poor representation by an attorney of defendant's own choosing is of no legal moment, (*People* v. *Ventura*, 415 Ill. 587,) and that a judgment of conviction will not be reversed merely because such counsel failed to exercise the greatest of skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. (*Putnam* v. *People*, 408 Ill. 582; *People* v. *Ney*, 349 Ill. 172.) Insofar as due process of law is concerned, this court has quoted with approval the holding in *United States* v. *Ragen*, 166 Fed. 2d 976, that mistakes of counsel, although indicative of lack of skill or even of incompetency, is not such a violation of due process of law as will vitiate the trial unless, on the whole, the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce. *People* v. *Stephens*, 6 Ill. 2d 257; *People* v. *Reeves*, 412 Ill. 555.

Looking to the record here as a whole, we cannot say that the representation of defendant was of such low caliber as to require a reversal or that the court, by failing to intervene, violated defendant's right to a fair trial. The calling of a witness whose testimony proves adverse to one's client is neither a rarity nor an indication of incompetency.

The important thing to be noted in this record is that the defendant herself was called upon to testify at length and denied most of the circumstances to which officer Cassidy had testified. Thus all the facts pertinent to the motion to suppress were presented to the court for its consideration. Such procedure was orderly and constituted due process. The same is true of the stipulation that the testimony heard on the motion to suppress would be the same as presented by the People in their case in chief. This was a trial before the court without a jury and by entering the stipulation the defense saved the time of the court and eliminated the necessity of repetitious testimony. In the absence of prejudice to defendant, and none is shown here, this would appear to be normal and good trial strategy, for the evidence showing the guilt of defendant would have been twice told and thus emphasized. As a basis for the claim that counsel's action operated to stipulate away defendant's basic right to a fair trial, great reliance is placed upon *People* v. *Nowak*, 372 Ill. 381. That case is readily distinguished, however, when its facts are stated. There the defendant's counsel stipulated the People's entire case against his client thus depriving him of any benefit of diligent cross-examination. The same is not true in the present case where a complete cross-examination of the People's witnesses preceded the stipulation. Under the circumstances, it is our conclusion that the action of defendant's counsel did not violate the concepts of fair and orderly procedure to which defendant was entitled. Cf. *People* v. *Morgan*, 2 Ill. 2d 360; *People* v. *Anderson*, 239 Ill. 168.

The defendant asserts that the charge against her should be defeated for the reason that she was entrapped by the police into making the unlawful sale. Such a contention is untenable. It is not an instigation or solicitation to commit a crime for an individual or officer, having reason to believe another is committing a crime, to furnish an opportunity for the commission of the offense, if the pur-

pose is, in good faith, to secure evidence against a guilty person and not to induce an innocent person to commit a crime. (*People* v. *Lewis,* 365 Ill. 156; *People* v. *Ficke,* 343 Ill. 367; *Sorrells* v. *United States,* 287 U.S. 435, 77 L. ed. 413; 17 Am. Jur. Drugs & Druggists, sec. 17.) The distinction, as pointed out in 15 Am. Jur. Criminal Law, sec. 335, is between inducing a person to do an unlawful act and the setting of a trap to catch him in the execution of criminal designs of his own conception. Clearly, therefore, there was no entrapment in this case.

The next contention of defendant is that the invasion of her apartment by the police without a search warrant was a violation of State and Federal constitutional prohibitions against unreasonable searches and seizures and that the court erred in failing to suppress evidence so obtained. Decisive, however, are those decisions of this, and of the Federal courts, which hold that the constitutional mandates denounce only unreasonable searches and seizures and that they do not preclude search and seizure incidental to a lawful arrest. (*People* v. *Hord,* 329 Ill. 117; *People* v. *McGowan,* 415 Ill. 375; *Harris* v. *United States,* 331 U.S. 145, 91 L. ed. 1399.) In furtherance of this principle, it has been held that if a law officer has reason for believing that the person to be arrested is implicated in a criminal offense, that is, a belief which would be such as to so influence the conduct of a reasonable and prudent man under similar circumstances, he has a right to arrest without a warrant and to search the party arrested without a search warrant. (*North* v. *People,* 139 Ill. 81; *People* v. *Humphreys,* 353 Ill. 340.) Such right also extends to a search of premises within the control of the person arrested. (*People* v. *McGowan,* 415 Ill. 375; *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653.) In the instant case the officers had ample reason to believe that a crime had been committed and that the defendant had committed it. On the basis of the cited authorities, therefore, the arrest and search

which followed were not unreasonable within the meaning of the constitutional prohibitions.

The concluding contention of defendant is that she was not proved guilty beyond a reasonable doubt, her main point of argument being that there was no proof that the powder she sold was opium or heroin, as charged in the indictment. Recourse to the record shows that Cassidy, who field tested the powder, stated that it was a derivative of opium, whereas the police chemist who later analyzed it, described it as diacetyl morphine hydrochloride, commonly known as heroin. Because of this difference in testimony defendant contends there was a complete failure of proof that the powder she sold was a narcotic substance as charged in the indictment. Little merit, however, can attach to such a contention for we find it stated in 27 Words and Phrases 599, (Perm. ed.) that morphine is the principal alkaloid of opium and, in 19 Words and Phrases 412, (Perm. ed.) that heroin is a derivative of morphine and a narcotic drug. It would appear thus that both witnesses were correct and that defendant's argument is without foundation.

Defendant also argues that doubt attaches to the question of whether the powder analyzed by the chemist was the same powder Baker purchased. While it is to be agreed that the foundation established for the chemist's testimony leaves much to be desired, the defect pointed out is not fatal in light of the fact that the testimony of officer Cassidy was sufficient to establish beyond a reasonable doubt that the powder purchased from the defendant field tested as a derivative of opium.

From a careful examination of the entire record, we are convinced that the evidence establishes the guilt of defendant beyond a reasonable doubt. The judgment of the criminal court of Cook County is correct and is affirmed.

*Judgment affirmed.*