**People of the State of Illinois, Plaintiff-Appellee, v. Frank L. Taylor, Defendant-Appellant.**

Gen. No. 51,267.

First District, Fourth Division.

April 24, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John F. Ward, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Defendant was charged with attempted (murder). (Ill Rev Stats 1963, c 38, § 8-4.) After a bench trial he was found guilty and sentenced to a term of five to ten years.

In this court the defendant urges: 1) that the State failed to prove him guilty of the crime of attempted murder beyond a reasonable doubt; and 2) that he was denied due process of law because the trial court made a determination based upon private knowledge of the

court, untested by cross-examination or any of the rules of evidence.

On May 9, 1964, at approximately 11:45 p. m., Officers Lynwood Harris and Love Davis of the Chicago Police Department were on patrol in an unmarked squad car, dressed in civilian clothes. They were traveling north on Kedzie Avenue, approaching 5th Avenue, when they heard shots coming from the rear. Officer Harris testified that when they heard the shots he and his partner turned around and saw the defendant standing on the corner, wearing a white cowboy hat, and firing a gun. Officer Harris stated that he drove into a gas station, jumped out of the car, and pursued the defendant to a billboard in an alley where he saw the defendant reloading his gun; that he called to the defendant, identified himself as a police officer, and ordered the defendant to halt and drop the gun, at which point the defendant closed the chamber of his gun and fired a shot in Officer Harris' direction.

Officer Harris further testified as follows: The defendant ran to Kedzie Avenue where he encountered Officer Davis, who called to the defendant, "Halt, police officer." The defendant slipped and fell, fired two shots at Officer Davis, and ran across a vacant lot; he then turned and fired again at Officer Davis. Officer Harris called to the defendant, "Halt, drop the gun, police officer." The defendant kept running across the vacant lot to a building at 3237 West Adams Street, where he hid behind a 4-foot retaining wall. When Officer Harris got to the side of the building he saw the defendant crouched on the ground reloading his gun; he told the defendant to leave the gun on the ground and to come up with his hands in the air. The defendant said, "Don't shoot; I'm shot already." After the defendant was taken into custody Officer Harris asked him why he was firing the gun on the corner and the defendant said he was "firing at some guys." When asked what guys, he said he didn't know. The testimony

of Officer Davis substantially corroborated that of Officer Harris.

The defendant testified that he wore the pistol to work because he had been robbed on several occasions, which robberies he had reported to the Fillmore District Police Station. His testimony continued as follows: On the night in question he had failed to get off a bus at his stop, and was walking back to Jackson; as he approached the corner a car with six or seven teen-agers inside pulled out of a service station up to the stoplight; they cursed the defendant and he said, "Well, if anything that I said or did wrong, well, I was sorry." When the car pulled away from the light two shots were fired from it at the defendant. He fired three shots at the car. He ran behind the gas station. He did not go up the alley because it was too dark. He was trying to reload the gun behind the station when a couple of shots were fired over his head. He closed the gun and ran east on Kedzie, where he slipped and fell, and "two more shots appear on me." He got up and started running north on Kedzie toward Madison, where he knew there was a police car at all times.

The defendant said he did not know the shots were being fired by policemen; that he did not hear the words, "Halt, police"; that he believed the shots were fired by the boys who had been shooting from the automobile; that "my gun didn't have but three shots in it from the time of the corner"; and that he never raised his gun after the three shots were fired at the corner. He claimed that when he tried to reload he was unable to put the shells in the gun because "they was right up on me." He stated that he did not know the men chasing him were policemen until he saw the handcuffs in their hands. He also testified that there was a man standing with him when the boys fired at him; that this man said he worked in the gas station, but he couldn't bring him to court because he couldn't find him, even though he had gone to the service station several times looking for him.

133

On cross-examination the defendant stated that when he was behind the billboard he was unable to put any more ammunition in his gun, and that he did not at any time fire his gun at the two men chasing him. He was on Adams Street when shot and was finally arrested while attempting to reload.

█ Defendant's first contention is that the State failed to prove him guilty beyond a reasonable doubt of the crime of attempted murder. Section 8–4(a) of the Criminal Code of 1961 (Ill Rev Stats 1963, c 38, § 8–4(a)) provides that "a person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." The intent to kill or do great bodily harm to another satisfies the mental state requirement for the offense of murder. (Ill Rev Stats 1963, c 38, § 9–1(a)(1).)

The Criminal Code of 1961 (Ill Rev Stats 1963, c 38, § 4–4) defines "intent" as follows:

"A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct."

In People v. Smith, 71 Ill App2d 446, 219 NE2d 82, this court stated at page 454:

"As the Supreme Court noted in People v. Coolidge, 26 Ill2d 533, 187 NE2d 694 (1963), intent is a state of mind and if it is not admitted, it can be shown only by surrounding circumstances; consequently, an intent to commit murder may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. A sane man is presumed to intend all the natural and probable consequences of his own deliberate act; *if one voluntarily and willfully does an act the direct and natural tendency*

*of which is to destroy another's life, the conclusion, in the absence of qualifying facts, is that the taking of the other person's life was intended.* People v. Brooks, 52 Ill App2d 473, 202 NE2d 265 (1964) ; People v. Coolidge, supra." [Emphasis supplied.]

See also People v. Moore, 77 Ill App2d 62, 222 NE2d 142; People v. Masterson, 79 Ill App2d 117, 223 NE2d 252.

■ The evidence in the instant case indicates that there are conflicting stories as to what took place on the night in question. The police officers contend they called out to the defendant that they were police officers and that the defendant replied by firing at them several times. The defendant maintains that he did not hear the officers call out to him and that he did not fire any shots in their direction; that in fact, he did not fire any shots after the first three on the corner. It is evident that the trial judge believed the police officers. In Schulenburg v. Signatrol, Inc., 37 Ill2d 352, 226 NE2d 624, the Supreme Court said, at page 356:

"Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (Brown v. Zimmerman, 18 Ill2d 94, 102; Illinois Nat. Bank & Trust Co. of Rockford v. County of Winnebago, 19 Ill2d 487, 495; Mortel v. Beckman, 16 Ill2d 209.) Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion."

In our opinion, the State proved the case against the defendant in the instant case beyond a reasonable doubt.

The cases cited by defendant in support of his first contention have no application to the case at bar. In Hammond v. People, 199 Ill 173, the court was no doubt correct in holding that to support a charge of attempted murder the attempt must have occurred under such circumstances that, had death ensued, the killing would have constituted murder and not merely manslaughter or homicide justifiable on the grounds of self-defense. That is the construction which clearly should be given to section 8–4(a) of the Criminal Code. In the instant case, however, had defendant's attempt succeeded, the killing would have resulted in the murder of Officer Davis. As mentioned previously, the defendant must be considered to have been aware of the fact that his pursuers were police officers attempting to apprehend him. Defendant is also unable to bring his appeal within the doctrine of manslaughter pronounced in People v. Scalisi, 324 Ill 131, 151 NE 715. Unlike the situation in that case, the defendant in the instant case did not resist and attempt to kill a known police officer who was illegally attempting to arrest him. Certainly, a police officer observing a man firing a gun on a street corner would have probable cause to arrest that person.

 Defendant next contends that he was denied due process of law because the trial judge made a determination based upon private knowledge of the court. This contention is also without merit. The rule regarding the application by a trial court of its own private knowledge was set forth in People v. Wallenberg, 24 Ill2d 350, 181 NE2d 143, where the court stated at page 354:

"A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by

cross-examination, or any of the rules of evidence constitutes a denial of due process of law."

However, in People v. Jeffries, 26 Ill2d 248, 186 NE2d 242, the rule of the Wallenberg case was distinguished in that it only applied to the specific situation where the private knowledge was used to contradict important testimony offered by the defense.

■ In the instant case, the trial judge erroneously determined from his own private knowledge that the defendant lived on a street which would place his address in the Warren Avenue District rather than in the Fillmore Avenue District. The record clearly shows, however, that the court was corrected and acknowledged its mistake. The defendant was not prejudiced.

■ The trial judge took judicial notice of the fact that Kedzie Avenue, where the shooting took place, was eight blocks past the Crawford Avenue stop nearest the defendant's home. This determination can in no way be said to contradict the defendant's testimony. All that the defendant testified to was that he had fallen asleep, which accounted for his missing the stop; he never denied being on Kedzie Avenue, nor that it was a mile from his customary stop. In People v. Biocic, 80 Ill App2d 65, 224 NE2d 572, the court stated that the trial court had a right to take judicial notice of the nature of the area involved. A court may take judicial notice of whatever may be known by common observation, since a court is presumed to be as well informed as the general public and can certainly take judicial notice of that which everyone knows to be true.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.