THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD ALLEN, Defendant-Appellant.

(No. 70-180;

Third District—May 12, 1971.

Theodore A. Gottfried, of Defender Project, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Kankakee County.

On January 26, 1968, the defendant, Howard Allen, along with Robert Smiley and Aubry Williams, was indicted for the armed robbery of Virgil Stone, an attendant at the Hicksatomic Gasoline Station in Kankakee, Illinois.

On June 28, 1968, the defendant appeared in court *pro se* and was served a copy of the indictment and on that appearance he advised the court that he was to be represented by Merwin Auslander, an attorney of his own choice. He further stated that he adopted on his behalf motions for reduction of bond previously made by his co-defendants, Smiley and Williams. On July 1, 1968, defendant Allen was again in court for the purpose of a hearing on the motion to reduce bond. At this hearing the defendant was represented by Patrick Burns, who was counsel for co-defendant Aubry Williams. The motion was granted and defendant was released on bond. On July 3, 1968, the defendant was present in court for the purpose of arraignment and was represented by attorney Harry Gerde. The defendant entered a plea of not guilty and the case was placed on the trial calendar for July 8, 1968, and from day to day thereafter. On September 16, 1968, the defendant was again in court and represented by his attorney, Mr. Auslander. The defendant's motion for continuance was granted and the case was set for trial on January 6, 1969. The defendant, along with his counsel, Mr. Auslander, was again in court on January 7, 1969. It was on this date that the defendant waived a trial by jury and the case was set for bench trial on February 17, 1969. On February 17, 1969, the defendant was in court with his counsel, Mr. Auslander, when the case was called for trial. The defendant joined with co-defendant Williams in a motion to suppress evidence, which was denied. Defendant then moved for a continuance which was granted over the State's objections and the trial was continued to March 31, 1969. Also on this date the defendant, by Mr. Auslander, his

attorney, moved that the court be ordered to furnish a correct address for the complaining witness, Virgil Stone, and any other change of addresses of witnesses which had occurred since a previous list of witnesses had been furnished to the defendant. The court ordered the State's Attorney to furnish the present address of Virgil Stone and corrected addresses of any other witnesses. On March 7, 1969, the amended address of witness Virgil Stone was filed which stated "last known address of witness Virgil Stone is Waterloo, Illinois."

The defendant appeared in court *pro se* on March 17, 1969, and the cause was continued for trial to April 28, 1969, and from day to day thereafter.

On April 28 the defendant and his attorney, Mr. Auslander, were in court and the case was called for trial. It was at this time that Aubry Williams, the only other defendant remaining in the case, withdrew his plea of not guilty and entered a plea of guilty to the charge in the indictment. The court accepted the guilty plea of Aubry Williams and set a hearing on his motion for probation to a later date. The case was then assigned to Judge Herman Snow and set for trial in the afternoon of the same date. Upon the case being called for trial the defendant, by his attorney, Mr. Auslander, moved for continuance on the grounds that the withdrawal of co-defendant Aubry Williams from the case had completely and radically changed the character and nature of the defense which was needed to be prepared on behalf of the defendant and therefore additional time for preparation was needed. The trial court denied the motion.

The case proceeded to trial and the first witness for the prosecution was Virgil Stone, the complainant, who gave his address as "Route 1, Loudale Drive, Waterloo, Illinois." Counsel for defendant objected to the testimony of this witness on the grounds that the prosecution had failed to comply with the court's order to furnish the witness's correct address. The court overruled this objection and permitted the witness to testify. Upon cross examination the complainant Stone admitted that he never saw the defendant Allen with a gun but stated there was no doubt in his mind but what the defendant was one of the group of three people who robbed him.

At the conclusion of closing arguments the court took the matter under advisement and on May 2, 1969, the defendant was in court with attorney Alan Kawitt, who stated that he was appearing for Mr. Auslander. On this date the court adjudged the defendant guilty of armed robbery and increased bond from $25,000.00 to $50,000.00. On May 22 the defendant was in court again, represented this time by attorney Sheldon Reagan. A motion was made for reduction of the amount of

bond. The record fails to disclose whether this motion was granted or denied. On June 4 defendant with his counsel, Mr. Auslander, was present in court for a hearing upon the report of the probation officer. Defendant's father was presented as his sole witness in support of his application for probation. The probation hearing was continued to June 27, on which date the defendant and Mr. Auslander were again in court. Probation for the defendant having been denied, the court on August 6, 1969, heard evidence in aggravation and mitigation of sentencing. At this time the defendant was represented in court by his counsel, Mr. Auslander.

Subsequent to this hearing the defendant was sentenced to a term of imprisonment of not less than five nor more than ten years.

The issues presented in this appeal are (1) the defendant was denied effective assistance of counsel, (2) the defendant was denied his right to be advised of the nature of the accusations against him since there was a variance between the charge against him in the indictment and the proof which was later adduced during the course of the trial, (3) the court erred in refusing to exclude a witness whose address was inadequately described, (4) the defendant was denied an opportunity to adequately prepare his defense.

We have set forth in considerable detail the numerous court appearances of the defendant and what transpired on each occasion since we are confronted with the question as to whether or not the defendant was denied effective assistance of counsel.

■■ Such a contention finds its foundation in the decisions of our courts and the Federal courts which recognize that the conduct of counsel in a criminal trial may be such as to deny a defendant the fair trial that is contemplated by the due process provisions of both the State and Federal constitutions. (S.H.A., Const., Art. II, Sec. 2; U.S.C.A. Const., Amend. XIV; *Anders v. California*, 378 U.S. 738; *People v. DeSimone*, 9 Ill.2d 522, 138 N.E.2d 556; *People v. Clark*, 7 Ill.2d 163, 130 N.E.2d 195; *People v. Stephens*, 6 Ill.2d 257, 128 N.E.2d 731; *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810.) The rationale of the cited cases is that the defendant's right to assistance by counsel as provided by Article II, Sec. 9 of the Illinois Constitution and the 6th Amendment of the United States Constitution is not satisfied by the mere formality of the appointment of an attorney by the court, but such right embraces effective representation throughout all stages of the trial and where the representation is of such low caliber as to amount to no representation or to reduce the trial to a farce, the guarantees of due process are violated. *People v. Jackson*, 96 Ill.App.2d 99, 238 N.E.2d 234; *People v. McCoy*, 80 Ill.App.2d 257, 225 N.E.2d 123.

It should be noted that the Illinois cases where alleged incompetency of counsel has been urged as the reason for setting aside a conviction fall into two categories which are (1) cases wherein the defendant was represented by counsel of his own choice, and (2) cases wherein the defendant was represented by counsel appointed by the court. A detailed and comprehensive discussion as to the rule to be applied in each type of case was set forth in *People v. Morris, supra.* It was for some time the almost inflexible rule that where defendant retained counsel of his own selection that he, the defendant, was responsible if that counsel did not faithfully serve his interests. (*People v. Mitchell,* 411 Ill. 407, 104 N.E.2d 285.) While the Illinois courts still recognize the distinction between privately retained and court appointed counsel situations, there has been some relaxation in the strict accountability rule which had previously been applied when defendants complained of incompetency on the part of counsel of their own choice. We are aware of the somewhat recent case of *People v. Hurst,* 42 Ill.2d 217, 247 N.E.2d 614, wherein it was stated:

"Our court has long held that a defendant who chooses his own attorney cannot complain about that attorney's lack of care and skill in handling his case. Since the defendant was represented by counsel of his own choosing, counsel's alleged failure to exercise care and skill in the trial of his case cannot afford a basis for reversing the judgment rendered."

In the *Hurst* case the Supreme Court followed the strict accountability rule where the defendant was represented by counsel of his own choice. However, the same court on many occasion has held that where the question of competence of retained counsel has been raised, then in order to determine that question there should be an examination of the entire record. See *e.g., People v. Underhill,* 38 Ill.2d 245, 230 N.E.2d 837; *People v. Duncan,* 32 Ill.2d 322, 205 N.E.2d 443; *People v. Palmer,* 27 Ill.2d 311, 189 N.E.2d 265; *People v. Strader,* 23 Ill.2d 13, 177 N.E.2d 126; *People v. Pride,* 16 Ill.2d 82, 156 N.E.2d 551; *People v. Clark, supra; People v. Stephens, supra.*

■■ We accept the conclusion that a reviewing court has authority to examine the trial record in order to determine the competency of counsel even though that individual was selected by the defendant. After examining the record we must determine if the representation received by the defendant was so grossly inadequate as to reduce the proceedings to a farce, *People v. Nelson,* 42 Ill.2d 172, 246 N.E.2d 244; *People v. Heirens,* 4 Ill.2d 131, 122 N.E.2d 231; or was the caliber of representation afforded the defendant such as would deprive the defendant of any chance of being found not guilty. *People v. McCoy, supra.*

In the case before us defendant contends that his counsel's incompetency was demonstrated in the following particulars: (1) that counsel failed to personally appear in court with him at every stage of the proceedings, (2) that counsel failed to make a motion for discovery of the Grand Jury minutes or police reports, (3) that counsel on day of trial stated unto the court that he was not prepared, (4) that counsel failed to make a written motion for continuance, (5) that counsel failed to have a record made of the preliminary hearing, (6) that no motion was made to suppress evidence, and (7) that counsel for defendant demonstrated his lack of knowledge of the best evidence rules.

■■ Directing our attention to the court appearances of the defendant we find the record discloses that he appeared in court a total of thirteen times. Seven times his attorney, Mr. Auslander, was present. Twice the defendant appeared in court *pro se* and on his first *pro se* appearance joined in a motion for reduction of bond which was subsequently granted. On his other *pro se* appearance the case was continued for trial to a date certain. We fail to see where the defendant was in any way prejudiced by his *pro se* appearances. On one occasion the defendant was represented in court by Mr. Burns, counsel for a co-defendant, and it was on this occasion that the court ordered a reduction in the amount of the bond and defendant was released from custody. On three occasions defendant was present in court represented by other counsel: Once when the defendant was arraigned, at which time he entered a plea of not guilty. The next time he was present when the court announced its decision finding defendant guilty of the charge contained in the indictment. The defendant was next in court with counsel other than his chosen attorney, Mr. Auslander, when a motion was made for reduction of bond. During these court appearances the defendant was represented by private counsel who were either associated or appearing on behalf of Mr. Auslander, and the record is devoid of any acts or omissions on the part of such counsel which in any way detracted from able and capable representation. Mr. Auslander appeared in the court seven times for the purpose of making motions, participating in the trial, participating in hearing on a motion for probation and in hearing in aggravation and mitigation of sentencing. The defendant has compiled a "box score" concerning his counsel's appearances in court, yet fails to show where he was at any time prejudiced by appearing *pro se* or being represented by associate counsel.

The defendant charges that his counsel failed to make a motion to suppress evidence but the record belies this charge since such a motion was made and denied by the court.

■■ When the record is read in its entirety we fail to find that Mr.

Auslander, the defendant's counsel, has stated to the court that he was not prepared. He did move for a continuance as a result of co-defendant Williams withdrawal of a not guilty plea and his tendering and the court's acceptance of a plea of guilty. Counsel for the defendant argued that the withdrawal of the co-defendant Williams from the trial radically changed the character and nature of the defense that was needed on behalf of his client. The court failed to agree with this argument and denied the motion for continuance. The defendant now urges that at the time of this motion his counsel's incompetency was illustrated by his failure to present the motion for continuance in writing. The record discloses that counsel did receive the court's permission to reduce the motion to writing at a later time, but that he failed to do so certainly does not indicate incompetency since reducing a motion to writing which in fact had already been denied could only have been a useless, futile and unnecessary act.

The defendant claims that his attorney's incompetency was demonstrated when he failed to seek discovery of the Grand Jury minutes, failed to ask for police reports, failed to have a record made of preliminary hearing, and that he further failed to show a clear understanding of the best evidence rule. In regard to this latter point there is no clear showing in the record that counsel did not understand the best evidence rule and this contention can only be considered as a conclusion on the part of the defendant.

The routine pre-trial motions such as requesting a copy of police reports, list of witnesses or a transcript of the testimony at a preliminary hearing are generally considered essential to the defense of a criminal action. (*People v. Jackson, supra.*) However, the failure to make such motions in the case cited was not solely determinative since there were additional factors which along with many other deficiencies on the part of counsel compelled the reversal of the defendant's conviction in the *Jackson* case. It should be further noted that in that case the defendant was represented by court appointed counsel rather than counsel of his own choice.

■■ We can only speculate as to whether the defendant would have been benefitted had his counsel obtained copies of police reports, had arranged for a transcript of the testimony at the preliminary hearing, and had made a motion to obtain minutes of the Grand Jury. The defendant was entitled to a fair trial, not a perfect one, for counsel is not required to be infallable. After examining the record we can only conclude that the defendant received a fair trial and was not prejudiced by incompetency of counsel.

■■ It is the defendant's further contention that there was a fatal variance between the allegations of the indictment and the proof. The

indictment returned against the defendant charged him with committing the offense of armed robbery while armed with a dangerous weapon, to-wit, a gun. The evidence adduced during the trial proves that the defendant participated in the robbery but that it was an accomplice, not defendant, who had possession of a gun. The law is clear and this argument of the defendant is not well taken. There is not a fatal variance between an indictment accusing a defendant directly as principal of committing the crime of armed robbery while armed with a dangerous weapon when the proof discloses that the defendant was an unarmed accessory. *People v. Touhy*, 31 Ill.2d 236, 201 N.E.2d 425.

■■■ It is the defendant's next contention that the court committed error in refusing to exclude a witness where the address was inadequately described. The defendant is referring to the trial court's ruling permitting Virgil Stone, the complaining witness and victim, to testify over the defendant's objection since when called the witness gave a rural route number and name of a drive in addition to the town name of Waterloo, Illinois. The defendant had been previously supplied with the name of this witness and the address given was listed only as Waterloo, Illinois. It is apparent from the record that the State furnished a list of witnesses with their addresses to defendant more than nine months prior to trial and this list included the name Virgil Stone and listed his correct address, which was then in Kankakee, Illinois. At a subsequent pre-trial hearing the witness, Virgil Stone, was present in court and the prosecution offered in open court to supply the then known address of Stone, but this offer was disregarded by the defendant. Later the prosecution, pursuant to court order, provided the corrected address of the witness Stone but merely listed the same as being in the city of Waterloo, Illinois. The defendant fails to explain why he did not interview the witness while he was at the Kankakee address, nor why he chose to ignore the opportunity to interrogate the witness when he was in court on a pre-trial motion to suppress evidence. It is within the discretion of the trial court to allow a witness to testify even though his name was not on a list of witnesses furnished the defendant and the burden is on the defendant to show surprise or prejudice in allowing such testimony. (*People v. Hopkins*, 29 Ill.2d 260, 194 N.E.2d 213; *People v. Gonzales*, 107 Ill.App.2d 44, 245 N.E.2d 791.) It would indeed be illogical to recognize the authority of a trial court to permit a non-listed witness to testify and then hold it to be error if a listed witness is permitted to testify over the objection that an incomplete address for the witness was given to the defendant. We do not conclude that the address of "Waterloo, Illinois" was adequate or inadequate, since we need not make such a determination, for permitting the witness to testify is in the discretion of the

trial court and further there has been no showing that the defendant was in any way surprised or prejudiced by the trial court's ruling.

The final contention of the defendant is that he was denied an opportunity to adequately prepare his defense. After numerous continuances granted on motion of the defendant or occasioned by his filing of various other motions the trial of the defendant was had ten months after he had been arraigned. The defendant, however, argues that when the co-defendant Williams was withdrawn from the case that the character, nature and complexion of the trial then facing him had so radically changed that additional preparation time was necessary. Had the co-defendant Williams been called by the prosecution to testify during the trial of the defendant then some merit might well be attached to the defendant's contention. However, the co-defendant Williams did not testify during the trial. Before it can be held that a motion for continuance based on a lack of time to prepare for trial has ben improperly denied it must appear that the refusal to grant additional time has in some manner embarrassed the accused in his defense and thereby prejudiced his rights. (*People v. Coleman*, 259 N.E.2d 269, 45 Ill.2d 466; *People v. Ritcheson*, 396 Ill. 146, 71 N.E.2d 30.) The defendant called no witnesses in his behalf. The removal of the co-defendant from the trial when the trial was had ten months after defendant's arraignment and when the co-defendant was not called to testify during the trial presents no situation of embarrassment or prejudice which would constitute reversible error.

For the foregoing reasons judgment of the circuit court of Kankakee County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.