THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERMAN BANKS, Defendant-Appellant.

First District (2nd Division)    No. 80-850

Opinion filed December 22, 1981.

Marc R. Kadish, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Constantine N. Bastounes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was charged with and, following a bench trial, found guilty of murder. He was sentenced to 25 to 40 years imprisonment. Defendant appeals, raising as issues whether: the trial court properly admitted the testimony of an occurrence witness whose current address or telephone number had not been provided to defendant; the court erred in examining matters outside the record; and defendant was proved guilty beyond a reasonable doubt. For the following reasons we affirm.

Before trial, defendant moved to require the State to either amend its list of witnesses or specify whom it intended to have testify, so that defendant could determine whether to proceed with a jury or bench trial. That motion was denied, and he waived a jury trial "under protest." The prosecution then sought and received a continuance to the next day, noting that some of its witnesses were to be flown in from out of State.

At trial, Lisa Gillihan, who was living with the victim, Nolan Claire, on November 4, 1977, testified that on that date, upon returning to his apartment at 9:30 p.m., she observed two men standing in front of the door. She knocked and Alfred Taylor admitted her and the two men. Three people, including Taylor, were already in the apartment: Tony Collier, seated on a chair facing the window; Claire, seated on a couch; and Taylor, who was in the kitchen. Gillihan told Claire he had company and that she did not know who they were. Claire then turned, stood, and raised his hands, at which point the larger man shot Claire once with a rifle. The assailant was over six feet tall, wore a brown jacket and had a beard and mustache. On cross-examination Gillihan admitted she had been injected with drugs that night by Claire, and that the apartment lighting had been dim.

After Gillihan's testimony, the State announced that its next witness would be Anthony Collier. The defense moved to bar Collier's testimony and for a mistrial on the ground that defendant had not been provided with Collier's current address in New York, only his last known address in Chicago. Defendant argued that: if he had known Collier was available, he would have requested a jury trial; since he had been informed only of Collier's Chicago address and that he now lived somewhere in New York City, defendant had surmised that the State had not located Collier, who would not testify; and he was thus misled as to Collier's availability. Defendant claimed that had he been given Collier's present address, he would have attempted to interview him. The State responded that it did not know Collier's current address, only two telephone numbers through which a message to Collier could be forwarded. The court denied defendant's motion, but granted defense counsel an opportunity to interview Collier, who, however, refused to cooperate.

Collier testified that on November 4, 1977, at 8 p.m. he was in Claire's apartment with Gillihan, Harold Hayes, Taylor and Claire. Gillihan, Hayes and Claire left. Hayes returned at 9:15 p.m.; Claire returned at 9:30 and sat on the couch in the living room; and Collier also sat in the living room, on the chair facing the window. There was a light on in the kitchen and bathroom, and street lights were shining into the window, so that he was able to read. At 9:30 Gillihan returned, and said, "you have company, I don't know who it is." Claire replied, "wait a minute, who are you letting in here." Collier heard another voice say, "what did you say nigger?", and he turned to face the speakers. Defendant was standing 5 or 6 feet away from Collier and 3 feet from Claire. He saw defendant shoot Claire with a rifle. Gillihan stood 7 or 8 feet from Collier in the same room. Taylor was "nodding" in the kitchen. Defendant wore a long brown trench coat. Collier testified he had known defendant and his family for 7 or 8 years. After the shooting, Collier ran downstairs to call police. Outside he saw

defendant and another man 50 to 60 feet away, in a lighted alley. Collier heard defendant ask the other man, "did you see the expression on the mother fucker's face right before I shot him?" Although Collier called the police that night, he did not talk to them until November 11 or 12 at which time he identified defendant as the assailant.

On cross-examination Collier testified that Claire and Hayes had injected Gillihan with drugs the night of the murder, and they had both taken drugs themselves as did Taylor. He also stated that defendant was the larger of the two men in the apartment.

After closing argument, the court found defendant guilty. Defendant moved for a new trial, alleging that: he was prejudiced by Collier's having been called as a witness because he was never provided with a list of the actual, as opposed to potential, witnesses to be called; he was not provided with Collier's actual address pursuant to Supreme Court Rule 412(a)(i) (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)(i)); nor was he provided with the telephone numbers through which Collier was contacted by the State; and, in giving "New York City" as an address, the State implied it had no means of having Collier testify. The State argued defendant was not prejudiced or surprised by Collier's testimony since it comported with his preliminary hearing testimony; and Collier was not impeached with regard to his written statement to the police or his preliminary hearing testimony because his testimony comported with both statements. The court denied the motion, stating that defendant's arguments were substantially the same as in his previous motion for a mistrial; Collier's testimony at the preliminary hearing was substantially similar to his in-court testimony; and there was no evidence that defendant made any effort to contact or interview witness Gillihan before her testimony. The court also stated, "* * * referring back to the testimony of Mr. Collier at the trial * * * there was no impeachment of his testimony by the attorney for the defendant based on the testimony of the defendant at some prior date, namely, the preliminary hearing * * *."

Defendant's motion to reopen the evidence to call Taylor was granted. Taylor testified that on November 4, 1977, he was present in Claire's apartment at 9 p.m., along with Collier, Gillihan, and Claire. He and Gillihan were in the kitchen, and Claire was in the living room, when Gillihan answered the door and announced two people wanted to speak to Claire. Claire said, "let them in." They came in and Gillihan returned to the kitchen. Collier was in the bathroom with the door closed. Taylor was sitting at the door in the kitchen, and nothing blocked his view of the living room. One of the two men shot Claire with a rifle. Collier never emerged from the bathroom during the murder. Taylor testified that defendant was not one of the two men in the apartment that night. On cross-examination Taylor stated the shorter of the men in a black coat had

the rifle. He, as well as Gillihan and Claire, had taken drugs before the incident; Gillihan had injected herself with drugs. Taylor never told the police what he saw that day. After Taylor's testimony, the court again found defendant guilty and sentenced him as previously set forth.

■■ Defendant first contends that in failing to supply him with the telephone numbers through which the State had reached Collier, or with Collier's address, the State failed to comply with Supreme Court Rule 412(a)(i) and with section 114—9(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—9(a)). Both require the State to provide defendant with a prosecution witness' last known address and defendant argues that they must be interpreted to include any means through with a witness may be reached by defendant, including a telephone number. Further, defendant asserts, the State is obliged to update the addresses of any of its witnesses who have moved. Ill. Rev. Stat. 1979, ch. 110A, par. 415(b).

It is within the trial court's discretion to admit testimony of unlisted witnesses, and the exercise of that discretion will not be disturbed absent a showing by the accused of resulting prejudice or surprise. (*People v. Jordan* (1967), 38 Ill. 2d 83, 93, 230 N.E.2d 161; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.) Here, the trial court allowed a listed witness to testify over objection that an incomplete address for the witness was given to defendant. In light of the fact that defendant has not shown that he was surprised or prejudiced thereby, we find no abuse of discretion. (*People v. Allen* (1971), 132 Ill. App. 2d 1015, 1023, 270 N.E.2d 54. See also *People v. Anderson* (1977), 46 Ill. App. 3d 607, 614-15, 360 N.E.2d 1371.) Collier was listed as a witness. There is nothing in the record demonstrating that the defense sought to contact Collier either in Chicago or New York. Defendant was informed that witnesses were to be flown in from other States. Defendant made no showing that the unlisted witness could have been impeached had preparation been afforded; indeed, the State's assertion that Collier's testimony was consistent with the police statement and his preliminary hearing testimony has not been refuted. He was given the opportunity to interview Collier before he testified. Finally, no continuance was sought to further prepare, but defendant proceeded with the trial. *People v. Jordan; People v. Dees.*

■■ Defendant claims that the State's failure to comply with discovery rules prejudiced him by impeding the effectiveness of his cross-examination, relying upon *Alford v. United States* (1931), 282 U.S. 687, 692, 75 L. Ed. 624, 627-28, 51 S. Ct. 218. *Alford* held that cross-examination of a witness regarding his residence must be allowed so as to "place the witness in his proper setting." There is no indication in the record, nor does defendant allege, that he was prevented from cross-examining Collier as to his residence. Defendant also cites *People v. Gonzales* (1970),

120 Ill. App. 2d 406, 408, 257 N.E.2d 236, in which an indictment was dismissed because the addresses of the State's witnesses were not provided. The defendant in *Gonzales*, however, was not furnished with any addresses for the State's witnesses; here, defendant was provided with Collier's Chicago address. Defendant never inquired about Collier's address during cross-examination, nor did he otherwise indicate that he was interested in the address for investigative purposes. *People v. Keating* (1971), 2 Ill. App. 3d 884, 888, 270 N.E.2d 164.

■■ Defendant insists that the State's alleged noncompliance with the aforementioned sections deprived him of his right to a jury trial, asserting that he would not have waived a jury had he known Collier would be a witness; the State misled him into believing that Collier would not be called by failing to provide his address or telephone number; and his jury waiver was thus not knowingly exercised, relying on *People v. Norris* (1978), 62 Ill. App. 3d 228, 231, 379 N.E.2d 80. In *Norris*, the defendant was held entitled to a mistrial where a jury waiver was entered by him under the misapprehension that there were no eyewitnesses to the crime charged. The State, after trial began, added an eyewitness to its witness list and called him to the stand. *Norris* is inapposite here since Collier was included in the State's list of intended witnesses.

■■ Defendant next assigns as error the fact that the trial court considered Collier's preliminary hearing testimony, which was not introduced into evidence, in finding defendant guilty, referring to the court's statement in its ruling pursuant to defendant's post-trial motion, that Collier's testimony at trial was not impeached by his preliminary hearing testimony. Citing cases that hold that a court may not consider matters outside the evidence in determining guilt, defendant insists that the trial court here used the preliminary hearing evidence to bolster Collier's testimony at trial, particularly when the court compared Taylor's testimony to Collier's.

Although a determination made by the trial court based upon its private knowledge or on a private investigation of the court normally constitutes a denial of due process of law (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 354, 181 N.E.2d 143), not every circumstance in which extraneous or unauthorized information reaches the court requires reversal or a new trial. Such a disposition rests upon whether or not the defendant may have been prejudiced. (*People v. Coe* (1978), 67 Ill. App. 3d 552, 564, 384 N.E.2d 987.) Reliance on information found dehors the record is not reversible error where there is no evidence that it either misled or entered into the trial court's determination. (*People v. Barnes* (1977), 48 Ill. App. 3d 226, 230-31, 363 N.E.2d 50.) Specifically, a denial of due process results only where the trial court has used the information to

contradict important evidence offered by the defendant. *People v. Jeffries* (1962), 26 Ill. 2d 248, 186 N.E.2d 242; *People v. Taylor* (1968), 95 Ill. App. 2d 130, 137, 237 N.E.2d 797.

■■ ■ It is clear from the instant record that the court did not consider Collier's preliminary hearing testimony for any purpose either directly or tangentially related to determining defendant's guilt. The court's remarks were addressed to defendant's post-trial claim of prejudice in not having been supplied Collier's current address or telephone number. The court compared Collier's trial testimony with his preliminary hearing testimony in order to establish whether, due to the State's disregard of discovery rules, defendant had been surprised by the content of Collier's testimony at trial, not to determine defendant's guilt or innocence. In a bench trial, it is presumed that the judge considered only admissible and disregarded inadmissible evidence in reaching his conclusion. (*People v. Harris* (1974), 57 Ill. 2d 228, 314 N.E.2d 465; *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.) We see no basis here for setting aside that presumption.

Finally, defendant asserts that he was not proved guilty beyond a reasonable doubt. We disagree. Our analysis of the evidence, set forth earlier in this opinion, convinces us that the trial court's determination well supported the finding of defendant's guilt beyond a reasonable doubt.

■■ It is neither our duty nor privilege to substitute our judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182.

For the foregoing reasons, we affirm defendant's conviction.

Affirmed.

STAMOS and PERLIN, JJ., concur.