2024 IL App (1st) 221607-U

No. 1-22-1607

Order filed March 1, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 19 CR 16971 |
| VERTIS PETERSON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | William H. Hooks, |
| | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mikva and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The State proved beyond a reasonable doubt that defendant acted with specific intent to kill. Affirmed.

¶ 2    Following a bench trial, defendant, Vertis Peterson, was found guilty of attempted murder and aggravated battery with a firearm. He was sentenced to 31 years in prison. On appeal,

defendant contends that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill, and therefore the conviction should be reversed. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with five counts of attempted first-degree murder (720 ILCS 5/9-1(a)(1) (West 2018)), and one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2018)). The following evidence was presented at a bench trial.

¶ 5     The victim, Warner Charles, testified that on November 9, 2019, he was delivering groceries to his brother at about 1 p.m. When his brother did not answer the door, Charles began to leave the porch when he encountered defendant. Defendant lived with his grandmother two doors down from Charles's brother, and the two had spoken before. Defendant accused Charles of stealing his bicycle, an accusation he had made in the past.

¶ 6     Charles testified that after about one to three minutes of arguing, defendant pulled a gun out of his pocket and fired six shots at him from less than two feet away. One of the bullets hit him in the abdomen, four of the bullets hit him near the elbow area of his left arm, and one of the bullets was found in his sweater. Charles walked away and flagged down Sergeant Renee Whittingham, of the Chicago Police Department, who was responding to a call about gunshots in the area. Charles lifted his sweater to show Sergeant Whittingham that he had been shot. The footage of that interaction was captured on Sergeant Whittingham's body camera and played for the trial court.

¶ 7     Charles was taken to the hospital where he told the police he did not know the name of the person that shot him but knew where he lived. The next day, Detective Jonathan Janas visited Charles in the hospital and showed him a photo array. Charles identified defendant as the shooter.

¶ 8    Charles underwent surgery to repair damage to his abdomen as a result of the injuries he sustained from the gunshots. The surgery resulted in the removal of a segment of the small intestines and two segments of his colon. Charles spent 16 days in the hospital.

¶ 9    As a result of his gunshot wounds, Charles required a colostomy bag for approximately eight months. A bullet remains lodged near Charles' kidney, and another one in his hip. He suffered a fracture to the top portion of his pelvic bone. He testified that his stomach starts "leaking" every time he bends over to tie his shoes. He was taking medication to manage his pain and was still experiencing shortness of breath. At the time of trial, he was awaiting his sixth abdominal surgery to remedy issues caused by the gunshot wounds.

¶ 10    At the close of the State's case-in-chief, defendant moved for a directed finding, arguing that the State failed to prove beyond a reasonable doubt that he had the requisite mental state to support the attempted murder charges. The trial court denied the motion.

¶ 11    After closing arguments, the trial court found that Charles was largely credible and that defendant's act of shooting Charles five times at close range was sufficient to establish the necessary intent to find defendant guilty of attempted murder. The parties stipulated to the surgeries performed on Charles, and the trial court noted that each of these surgeries carried a risk of death.

¶ 12    The court found defendant guilty on counts 1-4, which were attempted murder charges. It did not find defendant guilty on count 5, stating that it did not hear evidence of any permanent disfigurement to Charles. The court also found defendant guilty of count 6, which was aggravated battery with a firearm.

¶ 13    At sentencing, defense counsel requested the minimum sentence of 31 years (6 years plus a mandatory 25-year add-on for the use of a firearm). The trial court sentenced defendant to 31 years in prison. Defendant now appeals.

¶ 14                                                    II. ANALYSIS

¶ 15    On appeal, defendant contends that the State did not prove beyond a reasonable doubt that he had the specific intent to kill Charles. Defendant relies on the fact that Charles was shot in the arm and abdomen, and that defendant was close enough to Charles that if had intended to kill him, he had the opportunity to do so. Defendant argues that at most, the evidence established that he committed the offense of aggravated battery with a firearm. The State responds that it proved specific intent beyond a reasonable doubt where the evidence showed defendant deliberately fired six shots at Charles at close range. We agree.

¶ 16    When challenging the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard of review does not allow an appellate court to substitute its judgment for that of the factfinder on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Sutherland*, 155 Ill. 2d 1, 17 (1992). A conviction must be reversed when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id*.

¶ 17    "To prove a defendant guilty of attempted murder, the State must prove: (1) that defendant performed an act that constituted a substantial step toward committing a murder; and (2) that he had the criminal intent to kill the victim." *People v. Teague*, 2013 IL App (1st) 110349, ¶ 22.

Defendant contends that the State did not meet the second element – that he had the criminal intent to kill Charles.

¶ 18    "The question of [a] defendant's state of mind at the time of the crime [is] a question of fact to be determined by the jury ***." *People v. Pertz*, 242 Ill. App. 3d 864, 903 (1993). "Mental states, such as the intent to kill or to cause great bodily harm, are not commonly established by direct evidence and may be inferred from the character of the defendant's conduct and the circumstances surrounding the commission of the offense." *People v. Adams*, 308 Ill. App. 3d 995, 1006 (1999). "These circumstances may include the character of the assault, the use of a deadly weapon, and the nature and extent of the victim's injuries." *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 59. An intent to kill "may be inferred if one willfully does an act, the direct and natural tendency of which is to destroy another's life." *People v. Migliore*, 170 Ill. App. 3d 581, 586 (1988).

¶ 19    Here, the evidence showed that defendant initiated an argument with Charles about a bicycle, an argument they had had in the past, while armed with a firearm. He then fired six bullets at Charles at close range, wounding him five times. Charles's injuries were extensive. Charles underwent five surgeries on his abdomen, removing 45% of his intestines, and causing Charles to wear a colostomy bag for eight months. Two bullets remain lodged in his body. At the time of trial, he was taking medication to manage his pain, waiting for a sixth surgery, and still experienced shortness of breath. Looking at the evidence in a light most favorable to the prosecution, a rational trier of fact certainly could have found that defendant had the specific intent to kill Charles. See *Carlisle*, 2015 IL App (1st) 131144, ¶ 59 (circumstances used to prove intent to kill include character of assault, use of a deadly weapon, and the extent of the victim's injuries).

¶ 20    We are unpersuaded by defendant's reliance on *People v. Mitchell*, 105 Ill. 2d 1 (1984), and *People v. Thomas*, 127 Ill. App. 2d 444 (1970). In *Mitchell*, the court found that the circumstances of the defendant striking her 16-month-old child, without more, were insufficient to establish the required intent, particularly in view of the defendant's explanations for her behavior, the fact that she cared for the child afterward, and that she brought the child to the hospital. *Id*. at 9-10. In *Thomas*, the circumstances of the defendant cutting the victim's face with a knife before raping her were insufficient to establish the required intent because the opportunity for murder was such that there was insufficient proof that defendant attempted to commit that crime. *Id*. at 456.

¶ 21    Unlike in *Mitchell* and *Thomas*, here the circumstances were not such that defendant had the opportunity to kill Charles but chose not to. We are unpersuaded by defendant's argument that he was such a skilled marksman that he believed firing six shots at Charles's abdomen and arm at close range would not kill him.  Rather, we find the circumstances of this case to be more in line with those in *People v. Hill*, 276 Ill. App. 3d 683 (1995), and *People v. Migliore*, 170 Ill. App. 3d 581 (1988).

¶ 22    In *Hill*, the defendant threatened the victim, and then executed two drive-by shootings on the victim's house. 276 Ill. App. 3d at 688-89. The second time the defendant drove by, he looked up at the victim in the second-story window and fired shots at him. *Id*. No bullets hit the victim, yet the court found the circumstances were sufficient to prove intent to kill. *Id*. Similarly in *Migliore*, the defendant expected the victim to be standing at his front door and fired shots at his home, several shots hitting the door frame. *Id*. at 588.  Although no bullets hit the victim, the court found that the circumstances of the defendant's dislike for the victim and the height and aim of the fired bullets were enough to prove intent to kill. *Id*.

¶ 23    Here, defendant fired six shots directly at Charles, hitting him five times. The injuries Charles sustained required several surgeries, Charles experiences continued shortness of breath, and two bullets remain lodged in his body. We find that the State proved beyond a reasonable doubt that defendant had the intent to kill where he used a deadly weapon, had accused Charles of stealing his bicycle, and where he fired six shots at Charles from less than two feet away, causing serious, lifelong injuries. See *Carlisle*, 2015 IL App (1st) 131144, ¶ 59 (circumstances to prove intent to kill may include the character of the assault, the use of a deadly weapon, and the nature and extent of the victim's injuries).

¶ 24    Defendant also argues that the trial court improperly considered certain facts outside the record when discussing the extent of Charles's injuries when determining defendant's intent to kill. Specifically, defendant takes issue with the following comments the trial court made: (1) that Charles's clothing saved his life, and (2) that surgeries generally carry a risk of death.

¶ 25    During a bench trial, a trial judge's deliberations are "limited to the record made before him or her during the course of trial." *People v. Dunn*, 326 Ill. App. 3d 281, 286 (2001). In a bench trial, we presume the trial court "considered only competent evidence in reaching its verdict, unless that presumption is rebutted by affirmative evidence in the record." *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91. In a bench trial, it is for the trial judge, sitting as trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 26    The trial court's statements, in context, were as follows:

"There's nothing about that that justifies one citizen in the community taking a gun and shooting another citizen basically almost point blank but for the clothing of the victim in this case he would've died."

7

***

"The defendant is lucky in this case in the sense that the victim did not die. The victim survived. The victim surviving a death, a slow death and I won't say a death but a slow punishing result from the wounding that he had. He had to – he had a bag system, an elimination of waste from his body. He's gone through numerous surgeries and therefore every time he goes under the knife he goes through numerous possibilities that he won't come back out in terms of the surgery and the results of surgery."

¶ 27　Defendant contends that these comments are similar to those that appeared in *People v. Brown*, 2015 IL App (1st) 131873. In *Brown*, the victim got into an argument with the defendant and as she was leaving the room, she felt a punch to her back and then realized she was bleeding. *Id*. ¶ 3. The treating physician testified that she had lacerations on her back that had penetrated her skin, however there was no injury to underlying structures. *Id*. ¶ 5. He opined that it was possible that the "area in which [the victim] presented wounds could have resulted in her death," but stated that the cuts turned out to be superficial and not life threatening. *Id*. The victim left the hospital that same day. *Id*. The trial court found that the victim's wounds were "near organs *** that could have been life threatening," and that the treating physician had testified that the "wounds could have resulted in death." *Id*. ¶ 9.

¶ 28　On appeal, the *Brown* court reversed the attempted murder conviction based in part on the trial court's erroneous recollection that the physician testified that the "wounds could have resulted in death." *Id*. ¶ 16. The court clarified that the physician was quite clear in his testimony that the lacerations that the victim actually suffered turned out to be superficial and not life threatening. *Id*.

¶ 29    Contrary to *Brown*, the comments made by the trial court here were not erroneous. The trial court accurately summarized the circumstances of the shooting, the use of a deadly weapon, and the extent of Charles's injuries. Testimony was presented that defendant shot six bullets at Charles. Charles was hit by five of those bullets. When he was taken to the hospital, testimony was presented that a bullet fell out of Charles' sweater. It can be reasonably inferred that the bullet was unable to penetrate Charles' body because of the clothing he was wearing. Accordingly, we find that this comment was a reasonable inference drawn from the evidence presented, and not erroneous. *Siguenza-Brito*, 235 Ill. 2d at 228 (in a bench trial, it is for the trial judge, sitting as trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence.)

¶ 30    In terms of the comment about surgery carrying a risk of death, we note that in a bench trial, a "trial judge does not operate in a bubble; [he] may take into account [his] own life and experience in ruling on the evidence." *People v. Yarbough*, 93 Ill. 2d 421, 429 (1982). Reversal is only necessary when a trial court's reliance on matters outside the record is prejudicial to one of the parties. *People v. Banks*, 102 Ill. App. 3d 877, 882 (1981). "Reliance on information found [outside] the record is not reversible error where there is no evidence that it either misled or entered into the trial court's determination." *Id.*

¶ 31    Here, the comment about surgeries carrying a risk of death did not form the basis of the trial court's finding that defendant had the intent to kill Charles. Rather, this was a benign comment about the general risks of surgery. See *People v. Jenk*, 2016 IL App (1st) 143177, ¶ 55 (affirming defendant's conviction where trial court's "benign comment" regarding fact not in evidence "did not form the basis of the court's finding" of guilt). The record shows that the trial court thoroughly summarized the testimony about the shooting, the use of a deadly weapon, and the resulting

injuries, which formed the basis of the trial court's determination of guilt. Accordingly, the comments made by the trial court did not amount to error and did not prejudice defendant.

¶ 32                                III. CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.