2021 IL App (1st) 191514-U

No. 1-19-1514

Order filed April 6, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 5510 |
| | ) | |
| VERNISHA HARRIS, | ) | The Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm defendant's conviction for arson where the evidence at trial was sufficient to prove her guilt beyond a reasonable doubt.

¶ 2   Following a bench trial, defendant Vernisha Harris was found guilty of arson (720 ILCS 5/20-1(a)(1) (West 2016)) and sentenced to two years' probation. On appeal, she contends that the State's evidence was insufficient to sustain her conviction because it was entirely circumstantial, and video evidence did not reveal the offender's facial features or hairstyle. We affirm.

¶ 3    Defendant was charged by indictment with burglary (count I) and arson involving damage to a garage (count II) and damage to a vehicle (count III) arising from an incident on January 28, 2017.

¶ 4    At trial, the State entered a stipulation to the foundation for footage depicting "the events in this case," specifically the burning of a garage and vehicle on the 7700 block of South East End Avenue in Chicago. The State also entered a stipulation that defendant was the registered owner of a 2009 black BMW sedan.

¶ 5    David Smith testified that he knew defendant "since the 90's," and by fall 2016, he lived with and dated her for 1½ years. He identified defendant in court. Their relationship ended in October 2016, but they had "sexual contact" once or twice after.

¶ 6    Smith bought a 2003 Pontiac Grand Prix for $3000 in November 2016. In December 2016, he showed the vehicle to defendant and they exchanged Christmas gifts. In January 2017, Smith started dating Monee Reid, who lived on the 7700 block of East End. He told defendant he stayed and recorded music at a friend's house at "77th and East End," but did not say he was dating someone who lived there.

¶ 7    Around two weeks before January 27, 2017, Smith was at Reid's house with his vehicle parked in front of the house when his vehicle's alarm sounded. He saw defendant in her BMW, double parked in the street parallel to his vehicle. When he dated defendant, he became familiar with the BMW, having drove, maintained, detailed, and handwashed it. Defendant gestured and looked towards Smith, who stood in the window of Reid's house. Then, defendant drove away. The next day, Smith discovered his vehicle was vandalized with sugar and candy bars.

¶ 8    On January 27, 2017, Smith stayed at Reid's house and parked his vehicle in her garage off the alley behind her house. The garage door could not completely close and would stay about one-quarter open. After 2 a.m. on January 28, 2017, Smith woke to people saying the garage and his vehicle were on fire, and saw this himself. The garage burned down, and the vehicle was a total loss.

¶ 9    Later, Smith spoke with police and watched a surveillance video depicting the alley behind Reid's garage. He recognized defendant's vehicle pull up, and somebody exit and limp to the garage. Smith could not see the person's face, but recognized the person as defendant based on her body shape, height, limp, and boots. Defendant had an injured leg and bad knee when they dated, and Smith saw this on the video when the person walked from the vehicle to the garage. Smith recognized defendant's tall figure, and he had seen the boots when he cleaned defendant's house.

¶ 10    The State published the black and white video, and Smith narrated it in court. The video depicts the alley behind Reid's house. Smith identified defendant's vehicle, which drives through the alley multiple times before approaching with its lights off. The vehicle's license plate is indecipherable, but a small circular logo on the front of the vehicle is visible. The vehicle pulls to the side of the alley. A woman wearing boots and a hooded sweatshirt exits the passenger side and slowly walks towards Reid's garage with something in her hands. She bends down to crawl into the garage, then exits the garage, and her vehicle pulls up to her. She next bends down outside the garage, lights a fire, and hurries to enter the passenger side of her vehicle. The vehicle drives away. The video continues until the garage is engulfed in flames and police arrive on the scene.

¶ 11    On cross-examination, Smith testified his break-up with defendant was "semi-cordial." Her knee would often hurt, and he saw her in pain when she walked. He saw defendant outside Reid's

house around 11 p.m. on the night when his vehicle alarm sounded, and told a detective that defendant was in a vehicle next to his. She did not exit her vehicle or have sugar or candy in her hands. Smith did not constantly surveil his vehicle, or see who put sugar or candy in the gas tank.

¶ 12    On January 28, 2017, Smith told police that defendant or Reid's ex-boyfriend set the fire. He thought Reid's ex-boyfriend might be responsible because he had "snoop[ed] around."

¶ 13    The court granted the defense's motion for a directed finding as to burglary and the count of arson involving the garage.

¶ 14    Defendant called Detective Kranz, who testified that he spoke with Smith, who informed Kranz that he saw defendant approximately two weeks prior to January 27, 2017.[1] Kranz prepared a report based on this interview. The defense entered a stipulation that Kranz's report did not mention defendant double parking, making a hand gesture, or looking at Smith in the window.

¶ 15    Kenton Brady testified that he knew defendant since childhood. On January 27, 2017, between 9 and 9:30 p.m., Brady and two of his cousins went to defendant's apartment on the 7200 block of South University Avenue. Brady used a key to enter the apartment with his cousins, and they watched television. Defendant returned from an office party between 9:30 and 10 p.m. Her eyes were red, and she smelled of alcohol. Defendant went to the kitchen, returned to the front of the apartment, and then entered her bedroom no later than 10:15 p.m. Before defendant entered her room, Brady's cousins left. He stayed, and watched television until 3:30 or 4 a.m. He would have seen if defendant exited her bedroom, and never noticed her leave her room or the apartment during this time. Between 6 and 6:30 a.m. defendant left for work.

---

[1]Kranz's first name is not in the record.

¶ 16    As a child, defendant had problems with her legs because one was longer. At times her knees were swollen, and Brady would "carry her to the car." Her knees were stiff but could bend, and to Brady's knowledge, she could not run. He watched the surveillance video and the person who entered the garage was not defendant. The woman in the video wore a hoodie and leggings, and he had never seen defendant wear a hoodie, leggings, boots or "Uggs." He only saw defendant wear blue jeans, casual dress pants, high heels, and "[o]ffice" wear.

¶ 17    On cross-examination, Brady testified that defendant was his cousin and good friend, and he knew her most of his life. Brady previously lived at defendant's apartment, and in 2017, defendant, her son, and her brother lived at her apartment. Brady did not know if her brother was home on January 27, 2017. He did not know which leg or knee defendant felt pain in.

¶ 18    Defendant testified that she did not go to the 7700 block of East End two weeks prior to January 27, 2017, double park in front of Smith's vehicle, or exit her vehicle, look at him, and gesture. She denied putting sugar in his gas tank, and did not know where his girlfriend lived.

¶ 19    On January 27, 2017, defendant attended a retirement party for a coworker at a restaurant on the 400 block of North Wells Street and had dinner and three coke and rums. Defense counsel published a group photo and invitation to the retirement party. Defendant arrived at her apartment between 9:30 and 10 p.m. and saw her cousins, including Brady. She went to the kitchen and saw her brother. After she went to the bathroom, Brady watched television, and her other cousins left. Defendant went to bed at 10 to 10:15 p.m. She did not leave her apartment until 6:30 a.m., and she spoke with Brady before leaving.

¶ 20    Defendant never had or wore the boots that Smith "claimed looked familiar" in the video. She did not own or wear a hoodie or leggings prior to January 27, 2017. Additionally, the person

in the video had a lighter skin tone than defendant. One of her legs was longer than the other, which caused arthritis, and swelling and pain in her knees. In October 2016, she suffered plantar fasciitis after pulling tendons and hurting her right leg. Defendant stated that her condition made it impossible to crouch down and go under the garage as the person in the video did or to run back to the vehicle. She agreed that the vehicle in the video resembled a 2009 BMW, but she could not tell the color. She denied setting a fire.

¶ 21    On cross-examination, defendant stated that both her legs have issues and she sometimes limps. She almost always wore heels because they shifted the pain. She spoke with Kranz and an assistant State's Attorney on March 19, 2017, and she denied telling them she drove around and saw Smith's vehicle on East End, and afterwards texted Smith that she knew where his new girlfriend lived. She remembered stating she only wore heels, even to the gym. During this interview she also stated that she did not remember which of her "21 cousins" was home on January 27, 2017.

¶ 22    In rebuttal, the State entered a stipulation that Assistant State's Attorney Stacia Webber would testify that on March 19, 2019, she and Kranz interviewed defendant, and defendant stated she saw Smith in a burgundy Grand Prix in January. Defendant saw Smith's vehicle on her drive home that same day on East End, and texted him that she knew where his girlfriend lived.

¶ 23    The court found defendant guilty of arson based on what it described as "powerful circumstantial evidence." The court recognized the vehicle captured on video as a BMW because of the emblem in the front center of the vehicle, and Smith's identification of the vehicle. According to the court, the person who exits the BMW in the video "strongly resembles *** defendant who is sitting here in open court." Additionally, the person walked with "small stunted

steps," which the court called a limp. Smith identified defendant after knowing her "for over 20 years" based on her height and weight in the video, and the court found that consistent with its observation in court of defendant's height, weight, and body shape. The court stated its observations were "obvious."

¶ 24 The court further found that the person in the video moved quickly towards the passenger's side of the BMW, but her movement was not "inconsistent in any way with someone who has a limp." The court noted that someone could move quickly given adrenaline and the startling effect of the fire. The court found Smith's testimony was calm, detailed, and "very credible." In comparison, Brady's testimony was "wholly unbelievable" given his illogical statements that defendant was in so much pain that he would carry her to her vehicle, but she routinely wore high heels. Defendant's testimony that she could not crouch was not credible, given the nature of her injuries. Finally, defendant was impeached by her statements to the assistant State's Attorney that she knew where Smith's girlfriend lived.

¶ 25 Defendant filed a motion for new trial, which was amended and denied. Following a hearing, the court sentenced defendant to two years' probation. Defendant did not file a motion for reconsideration of her sentence.

¶ 26 On appeal, defendant argues that she was not proven guilty beyond a reasonable doubt where the State relied on vague circumstantial evidence, a video which did not reveal the arsonist's facial features or hairstyle, and testimony from a biased witness.

¶ 27 Where a defendant challenges the sufficiency of the evidence presented by the State, the appellate court must ask whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found every element of the crime proven beyond a

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The trier of fact is responsible for determining the witnesses' credibility and the weight given to their testimony, resolving conflicts in the evidence, and drawing all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). The appellate court may not substitute its judgment regarding the weight of the evidence or the credibility of the witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. The appellate court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). Ultimately, a reviewing court " 'will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 28    As charged, a defendant commits arson if she knowingly by means of fire damages any personal property of another having a value of $150 or more without his consent. 720 ILCS 5/20-1(a)(1) (West 2016); *People v. Stewart*, 406 Ill. App. 3d 518, 528 (2010). Defendant does not challenge the evidence supporting the elements of the offense but instead, her identification as the offender.

¶ 29    The prosecution has the burden to prove beyond a reasonable doubt "the identity of the person who committed the crime." *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Although an identification cannot sustain a conviction if it is vague or doubtful (*id.*), "[t]he reliability of a witness's identification of a defendant is a question for the trier of fact" (*In re Keith C.*, 378 Ill. App. 3d 252, 258, (2007)).

¶ 30    In *People v. Thompson*, 2016 IL 118667, the Illinois Supreme Court explained that a trier of fact may consider a lay witness's opinion testimony for the purposes of identifying another

individual in a surveillance recording where the testimony is rationally based on the perception of the witness and helpful to a determination of a fact at issue. See *Thompson*, 2016 IL 118667, ¶¶ 50, 54. A lay witness's identification is helpful where he has had contact with the defendant that the trier of fact would not possess, which "achieve[s] a level of familiarity that renders the opinion helpful." *Id.* ¶ 50. Relevant factors include the witness's overall familiarity with the defendant; the witness's familiarity with the defendant's clothing when the recording was created; "whether the defendant was disguised in the recording or changed his/her appearance between the time of the recording and trial"; and "the clarity of the recording and extent to which the individual is depicted." *Id.* ¶ 51. Although the supreme court used these factors in considering the admissibility of identification testimony, they provide some guidance for evaluating the challenge to the sufficiency of the identification testimony in the case at bar. See, *e.g.*, *People v. Murray*, 2019 IL 123289, ¶¶ 32-34 (finding that decisions analyzing the admissibility of expert opinion testimony were "instructive" in considering whether such testimony was sufficient to support a conviction).

¶ 31    The video of the incident shows a woman exit a vehicle in the alley behind Reid's garage and enter the garage where Smith's vehicle was located. Shortly thereafter, the woman exits the garage, sets the garage on fire, and the garage and Smith's vehicle are destroyed.

¶ 32    Smith, who viewed the video, identified defendant as the woman who entered the garage due to her body shape, height, limp, and boots. Smith knew defendant for over 20 years, and had lived with and dated her for 1½ years. He had seen her and her vehicle approximately two weeks before the fire, when she parallel parked and gestured at him. In the video, the woman whom Smith identified as defendant did not disguise her appearance, and there is no evidence defendant changed her appearance prior to trial, when Smith identified her. Indeed, after viewing the video

and evaluating the witnesses' testimony, the court found that defendant "strongly resemble[d]" the person in the video clip. The court based this on defendant's height, weight, and body shape, and Smith's identification. Although defendant's face and hairstyle are not discernable on the video, taking Smith's testimony and the trial court's observations of defendant in the light most favorable to the State, the trial court could reasonably credit Smith's identification.

¶ 33    Defendant maintains that Smith was biased because he previously dated defendant and suspected her prior to viewing the video. The trial court's finding on Smith's credibility "was within its province as trier of fact," and "should not be second guessed by this court." *People v. Jenk*, 2016 IL App (1st) 143177, ¶ 50. Moreover, other evidence supported her guilt. The court viewed the video and saw defendant in court. Defendant acknowledged having a limp, which the court recognized in the video. Defendant identified the vehicle in the video as a 2009 BMW, and she owned a 2009 BMW. In light of this evidence, we cannot say that no reasonable trier of fact could determine defendant was the woman who lit the garage on fire and was therefore guilty of arson.

¶ 34    For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.